Rosemarie E. Matera
Kurtzman Matera, P.C.
Attorneys for Debtor in Possession
664 Chestnut Ridge Road
Spring Valley, New York 10977
845-352-8800

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re

Grace Church Realty Corp.,

                                Debtor.

-----------------------------------------------------------x

Chapter 11

Case No. 15-22787(RDD)

### STIPULATION AND ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL, GRANTING ADEQUATE PROTECTION AND GRANTING RELATED RELIEF

Grace Church Realty Corp., debtor and debtor in possession ("Debtor") and Cathay Bank[1] ("Lender"), stipulate and agree, subject to paragraph 9 hereof, as follows:

**WHEREAS,** the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code") with the United States Bankruptcy Court, Southern District of New York on June 4, 2015 ("Filing Date"); and

**WHEREAS**, on or about August 31, 2005, Lender loaned to the Debtor the original principal amount of $715,000.00, as evidenced in part by that certain Adjustable Rate Note dated August 31, 2005 in the original principal amount of $715,000 (as amended by that certain letter agreement dated August 2, 2007, collectively, "Note No. 1"), that certain Mortgage dated August 31, 2005 ("Mortgage No. 1"), and that certain Collateral Assignment of Leases and Rents dated August 31, 2005 (collectively, the "Grace Church Loan Documents", copies of which are annexed to the

---

1 Cathay Bank is the successor-by-merger to Great Eastern Bank.

Motion (defined herein) as Exhibit "A"); and

**WHEREAS**, pursuant to Mortgage No. 1, the Debtor mortgaged, inter alia, its interests in and to the Real Property (defined herein) to Lender; and

**WHEREAS**, Mortgage No. 1 and the Collateral Assignment of Leases and Rents were duly recorded in the Westchester County Clerk's Office (the "Clerk's Office") on March 21, 2006, resulting in a properly perfected first priority security interest in and lien on the premises known as 40 Grace Church Street, Port Chester, New York, 10573, Section 142.38, Block 2, Lot 36 (the "Real Property") and in rents, income and profits arising therefrom (collectively, the "Rents") to and in favor of Lender; and

**WHEREAS**, Juan Cepeda (the principal of the Debtor), Arlis Cepeda and Grace Church Restaurant Corp. ("Restaurant Corp.", and together with Juan Cepeda and Arlis Cepeda collectively, the "Loan No. 1 Guarantors"), executed that certain Commercial Loan Guarantee dated August 31, 2005 ("Guarantee No. 1"), pursuant to which they, inter alia, jointly and severally guaranteed the prompt and complete payment of the obligations owed to Lender under the terms of the Grace Church Loan Documents; and

**WHEREAS,** on or about August 31, 2005, Lender made a loan to Debtor's affiliate, Restaurant Corp., in the original principal amount of $235,000.00, as evidenced in part by that certain Promissory Note dated August 31, 2005 in the original principal amount of $235,000 ( "Note No. 2" and together with Note No. 1, collectively, the "Notes"); and

**WHEREAS,** as collateral and security for the payment of the indebtedness due to Lender under the terms of Note No. 2, the Debtor executed, acknowledged and delivered to Lender that certain Mortgage dated August 31, 2005 ("Mortgage No. 2" and together with Note No. 2, collectively, the "Restaurant Corp. Loan Documents", and together with the Grace Church

Loan Documents, collectively, the "Loan Documents"), included within Exhibit "B", whereby the Debtor once again mortgaged, inter alia, its interests in and to the Real Property to Lender; and

**WHEREAS,** Mortgage No. 2 was duly recorded in the Westchester County Clerk's Office on March 21, 2006, resulting in a properly perfected second priority security interest in and lien on the Real Property, subject and subordinate only to Mortgage No. 1; and

**WHEREAS,** the Debtor, Juan Cepeda, Arlis Cepeda and Portchester Market Corp. (collectively, "Loan No. 2 Guarantors", and together with the Loan No. 1 Guarantors, collectively, the "Guarantors"), executed a Commercial Loan Guarantee dated August 31, 2005 ("Guarantee No. 2" and together with Guarantee No. 1, collectively, the "Guarantees"), pursuant to which they, inter alia, jointly and severally guaranteed the prompt and complete payment of the obligations owed to Lender under the terms of the Restaurant Corp. Loan Documents; and

**WHEREAS,** prior to the Filing Date, the Debtor and Restaurant Corp. defaulted under the terms of the Loan Documents when they failed to pay those certain payments due under the terms of the Notes (the "Default"); and

**WHEREAS,** as a result of the Default, the Notes were duly accelerated and all of the Debtor's and Restaurant Corp.'s obligations under the Loan Documents became immediately due and payable; and

**WHEREAS,** the Debtor agrees that as of the Filing Date, it was and remains indebted to Lender in an amount not less than Seven Hundred and Seventy Thousand ($770,000.00) under the terms of the Loan Documents, and that said debt ("Pre-Petition Indebtedness") is secured by a valid, binding, enforceable and priority perfected lien on the Real Property and the Rents therefrom (the "Collateral"); and

**WHEREAS**, subject to the terms and conditions in this Stipulation and Order, the Lender

is willing to allow use of its "Cash Collateral", which term shall mean and include all "cash collateral" as defined in Section 363(a) of the Bankruptcy Code, that existed on the Filing Date or which arises thereafter pursuant to this Stipulation and Order, any other order of this Court, applicable law or otherwise (collectively, the "Cash Collateral"); and

**WHEREAS**, in return for adequate protection payments and other relief set forth in this Stipulation and Order, the Debtor requests that the Lender allow use of its Cash Collateral to pay certain obligations and to preserve the going concern value of the Debtor's estate, in accordance with the Budget annexed hereto as Exhibit "C", which may be supplemented on agreement of the parties to include repairs to the Real Property; and

**WHEREAS**, the Debtor believes that without use of its Cash Collateral, the Debtor will not have the funds necessary to meet its financial obligations necessary for the continued operation of the Debtor's business and the preservation of the Debtor's assets and property; and

**WHEREAS**, the Debtor believes that the ability of the Debtor to continue in business and remain a viable entity and thereafter reorganize under Chapter 11 of the Bankruptcy Code depends upon obtaining use of Cash Collateral from the Lender; and

**WHEREAS**, the terms contained in this Stipulation and Order are fair, necessary, essential, based upon good faith, arms-length negotiations, are necessary for the continued operation of the Debtor's business, and to prevent imminent and irreparable harm to the Debtor's estate, and reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and are supported by reasonably equivalent value and fair consideration; and

**WHEREAS,** the adequate protection provided to the Lender hereunder is consistent with the requirements of the Bankruptcy Code; and

**WHEREAS**, this Court has jurisdiction to enter this Stipulation and Order pursuant to 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K), (M) and (O) and 28 U.S.C. § 1334.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by and between the undersigned as follows:

A. Pending a final hearing for use of Cash Collateral, the Debtor shall not use the Cash Collateral without the consent of the Lender, except upon the terms and conditions of this Stipulation and Order. Lender's consent to allow the use of the Cash Collateral pursuant to the terms and conditions of this Stipulation and Order shall not be deemed to be a consent to any further or other use of the Cash Collateral upon the termination of this Stipulation and Order and shall not be construed as an acknowledgment by the Debtor that the Lender is fully secured by the Collateral or an admission by the Lender that it is not fully secured by the Collateral.

B. Debtor shall make adequate protection payments to Lender in an amount of Four Thousand Five Hundred ($4,500.00) Dollars per month commencing July 10, 2015, in accordance with the provisions set forth below. Such payments shall be applied only to the Lender's allowed secured claim under 11 U.S.C. § 506.

C. Lender is prepared to make available to the Debtor use of its Cash Collateral which will allow the Debtor to fund its working capital needs. The use of Cash Collateral will be governed by the terms of this Stipulation and Order.

D. The terms of the Stipulation and Order are, on an interim basis, fair and reasonable. The use of Cash Collateral has been negotiated in good faith and at arm's-length between the Debtor and the Lender.

E. The Lender will be entitled, on an interim basis, to the protection set forth below

in order to induce it to make use of Cash Collateral available and to secure its repayment on the terms and conditions set forth below, including the granting of post-Filing Date security interests to the extent of any post-Filing Date diminution in its valid, perfected and enforceable interest in the Collateral (the "Diminution").

F.    The Motion for An Order Approving Interim Use of Cash Collateral (the "Motion") and this Stipulation and Order has been served by email, facsimile or overnight delivery to the following parties: (i) the Office of the United States Trustee; and (ii) all parties having filed a notice of appearance, and (iii) by first class mail on all creditors. Such notice constitutes good and sufficient notice under Section 102 of the Bankruptcy Code and no other or further notice is required or need be given for the interim relief granted herein.

G.    Good, adequate and sufficient cause has been shown to justify the granting of the relief requested herein on an interim basis.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    The recital paragraphs set forth above are incorporated herein as if fully set forth herein.

2.    The Debtor is hereby immediately authorized and empowered to use the Cash Collateral of the Lender, pursuant to the terms of this Stipulation and Order, solely in accordance with the pro forma statement of ordinary and necessary operating expenses, each as acceptable to the Lender in its sole discretion (the "Budget"), which is annexed hereto as Exhibit "C", subject to the Debtor" s providing adequate protection hereunder to the Lender.

3.    Adequate protection payments shall be Four Thousand Five Hundred ($4,500.00) Dollars per month beginning July 10, 2015.  Such amounts shall be applied only to the Lender's

allowed secured claim under Section 506 of the Bankruptcy Code. The parties acknowledge that such sum is less than the monthly amount under Section 362(d)(3)(B) of the Bankruptcy Code. The parties, however, reserve their rights to address this Section of the Bankruptcy Code by way of a further Stipulation, an additional payment by the Debtor to the Lender, by motion or otherwise.

4. On the tenth day of the calendar month, such adequate protection payments shall be sent to the Lender. Payment of such adequate protection payments any later than the twentieth day of the calendar month shall constitute a violation of the terms of this Stipulation and Order and Lender may elect to declare an Event of Default (defined below) hereunder.

5. The Debtor will act solely in accordance with the Budget, including by way of illustration and not limitation, making no disbursements for categories of expenditures not specified in the Budget or in an amount in excess of the amount set forth in the Budget (with a variance of ten percent (10%)). The Lender has relied upon the Budget, and upon the Debtor"s agreement to act in accordance with the Budget, in deciding to allow use of its Cash Collateral. Any change to the Budget is subject to the Lender"s written consent. The Budget which has been furnished to the Lender by the Debtor has been prepared with a reasonable basis and in good faith making use of such information as was available at the date the Budget was made.

6. To provide adequate protection against, and in the amount of, any Diminution, in addition to the foregoing adequate protection payments, the Lender is granted a valid, binding, enforceable and perfected replacement lien and/or security interest, subject only to valid liens existing as of the Filing Date and the Carve Out (defined below), in all of the Debtor's presently owned or hereafter acquired property and assets with the exception of all rights and claims of the Debtor's estate under Chapter 5 of the Bankruptcy Code and the proceeds thereof ("Avoidance

Claims"), whether such property and assets were acquired by the Debtor before or after the Filing Date and shall have priority in right of payment over any and all other claims, debts, obligations, liabilities and indebtedness of the Debtor of any kind, now in existence or hereinafter incurred by the Debtor and over all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, Sections 105, 330, 331, 503(b), or 507(b) of the Bankruptcy Code; provided, however, that such replacement lien and the administrative expense priority of the Lender granted pursuant to the Stipulation and Order shall be junior and subordinate to the fees pursuant to 28 U.S.C. § 1930 of the Clerk of the Court and the United States Trustee, as well as any applicable interest thereon, and fees and expenses of any future Chapter 7 Trustee pursuant to 11 U.S.C. §§ 326 and 726 with any future Chapter 7 Trustee expenses not to exceed Ten Thousand ($10,000.00) Dollars (collectively, the "Carve Out"). Except as otherwise provided herein, no other claim having a priority superior or pari passu with the foregoing adequate protection lien and priority claim granted to the Lender pursuant to the terms of this Stipulation and Order shall be granted while any claim of the Lender hereunder remains outstanding.

7.    The security interests in and liens upon the Collateral granted to the Lender hereunder shall have priority over (a) the security interests in and liens upon the Collateral of any other person or entity which are perfected or granted on or after the commencement of the Chapter 11 case of the Debtor under the Bankruptcy Code or any other applicable law with the exception of any post-Filing Date unpaid real property taxes, and (b) except as otherwise provided herein, all unsecured claims and interests of all persons, including, without limitation, administrative expense claims, subject only to prior, valid, perfected, unavoidable liens in existence on the Filing Date and the Carve-Out. The security interests and liens granted to the

Lender hereunder shall not now or at any time hereafter be subject to any lien or security interest which is avoided and preserved for the benefit of the estates of the Debtor under Bankruptcy Code Section 551.  To the extent (i) any part of the Pre-Petition Indebtedness is repaid from any source whatsoever, or (ii) the Lender is required to return or pay back any prior payment in consideration of the Pre-Petition Indebtedness, any such repayment shall not affect, diminish or impair the liens and other protections granted hereunder.

8. The Debtor acknowledges and agrees that (i) it does not possess and will not assert any claim, counterclaim, setoff or defense of any kind or nature, with the exception of any surcharge claim under § 506(c) of the Bankruptcy Code, which would in any way affect the enforceability, priority, amount and validity of the claims and liens granted to the Lender under this Stipulation and Order (except with respect to the value of the Collateral), and (ii) the Debtor hereby releases, discharges, and acquits the Lender, and each of the Lender's officers, directors, shareholders, agents, professionals, representatives, employees, subsidiaries, and affiliates, and each of the successors, assigns, heirs and representatives of each (collectively with the Lender, the "Released Parties") from any and all claims, rights, demands, injuries, debts, damages, liabilities, omissions, contracts, agreements, actions, and cause of action, whether at law or in equity, and whether based on contract, tort, or otherwise, known or unknown, suspected or unsuspected, of every kind and nature, which any of the Debtor or its respective successors, assigns, heirs and representatives at any time had, now have, or hereafter can or may have against any of the Released Parties arising prior to the entry of this Stipulation and Order.

9. The agreements, concessions and release by the Debtor set forth in this Stipulation and Order (the "Lender Release") are subject to the right of any Committee appointed

in the Debtor's case and any other party in interest to file a complaint to assert any claims, including claims deemed released in the Lender Release against any of the Released Parties, on or before the ninetieth (90) day after the entry of a final order authorizing the use of Cash Collateral on the terms of this Stipulation and Order. If such a complaint is not timely filed in accordance with this paragraph, the Lender Release shall be recognized and deemed in full force and effect by all parties in this case, including any Creditors' Committee and/or subsequent trustee. Cash Collateral may not be used under any circumstances to litigate a claim that would be covered by the Lender Release against the Lender or Released Parties.

10. The security interests and liens granted to the Lender, as set forth herein, shall be deemed validly and properly perfected upon the entry of this Stipulation and Order by the Court without the necessity of filing, recording or serving any financing statements, mortgages, or other documents which may otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the security interests and liens granted unto the Lender in this Stipulation and Order. If the Lender shall, in its sole discretion, elect for any reason to file any such financing statements, mortgages or other documents with respect to such security interests and liens (i) the Debtor is authorized and directed to execute, or cause to be executed, all such financing statements or other documents upon the Lender's reasonable request, (ii) the automatic stay imposed under Bankruptcy Code, Section 362 is hereby vacated and modified to permit the Debtor to take such action, and (iii) the filing, recording or service thereof (as the case may be) of such financing statements, mortgages or other documents shall be deemed to have been made at the time of and on the Filing Date.

11. The Debtor is authorized and directed to provide to the Lender any and all documentation, reports, schedules, assignments, financial statements, insurance policies and

endorsements which the Lender may reasonably request.  The Lender has requested and the Debtor has provided, proof of insurance on the Real Property.

12. The Debtor is hereby authorized and directed to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements as the Lender may reasonably require as evidence of and for the protection of the Collateral or which may be otherwise deemed necessary by the Lender to effectuate the terms and conditions of this Stipulation and Order.  The automatic stay imposed by Bankruptcy Code Section 362 is hereby modified and vacated in all respects necessary in order to enable the Debtor to perform all of its obligations hereunder.

13. An "Event of Default" under this Stipulation and Order shall mean (i) the date of entry of an order to lift the automatic stay with respect to any of the Lender"s Collateral, (ii) the date of entry of an order dismissing or converting the Debtor"s case to a case under Chapter 7 of the Bankruptcy Code, (iii) the date of entry of an order appointing a trustee, examiner with expanded powers, responsible person, or other fiduciary in the Debtor's case that is not consented to by the Lender, (iv) immediately upon any use of the Lender's Collateral that is not in accordance with the terms of this Stipulation and Order, or (v) failure of the Debtor to perform or comply with the terms of this Stipulation and Order.

14. Upon and after the occurrence of an Event of Default (provided, however, that the Debtor shall have seven (7) business days from receipt of written notice with a copy to Debtor"s counsel, the United States Trustee, anyone who has filed a Notice of Appearance, each committee appointed under Section 1102 or 1114 of the Bankruptcy Code and the Debtor"s creditors, to cure the Event of Default arising under subsections (iv) and/or (v) above), and at all times hereafter, the Debtor shall immediately cease using Cash Collateral and shall segregate

and hold such Cash Collateral for the benefit of the Lender and the Debtor's authority to use Cash Collateral under this Stipulation and Order shall cease.

15. Having been found to have acted in good faith in agreeing to the terms herein, the Lender shall be entitled to the full protection of the Bankruptcy Code Sections 363(m) with respect to the Debtor's grant of the claims, debts, obligations, liens, security interests and other rights created or authorized in this Stipulation and Order in the event that this Stipulation and Order or other authorization contained herein is vacated, reversed or modified on appeal or otherwise by any court of competent jurisdiction. If any or all of the provisions of this Stipulation and Order are hereafter modified, vacated or stayed, such modification, vacatur or stay shall not affect (a) the enforceability, priority, amount and validity of any claim of the Lender authorized or created by this Stipulation and Order prior to the effective date of such modification, vacatur or stay or (b) the enforceability, priority, and validity of any security interest or lien authorized or created by this Stipulation and Order. Notwithstanding any such modification, vacatur or stay, all uses of Cash Collateral incurred by the Debtor prior to the effective date of such modification, vacatur or stay shall be governed in all respects by the original provisions of this Stipulation and Order, and the Lender shall be entitled to all the rights, remedies, privileges and benefits granted herein with respect to all of the liens granted herein.

16. There shall not at any time be entered into the Debtor's Chapter 11 case, or in any subsequent Chapter 7 case or any case involving the Debtor, any further order which (a) authorizes the use of Cash Collateral of the Debtor in which the Lender has an interest or (b) under Bankruptcy Code Section 364, authorizes the obtaining of credit or the incurring of indebtedness secured by a lien or security interest in property in which the Lender holds a lien or security interest, or which is entitled to a priority administrative claim status, which is equal or

superior to that granted to the Lender herein, unless, in each instance (i) the Lender shall have given its express prior written consent thereto, and no such consent shall be implied from any action, inaction or acquiescence by the Lender or (ii) such other order requires that there shall be indefeasibly paid in full in immediately available funds to the Lender the Lender's allowed secured claim, including any adequate protection claim.

17. The provisions of this Stipulation and Order and any actions taken pursuant thereto, shall survive the appointment of a Chapter 11 trustee or examiner and any order which may be entered confirming or consummating a plan of reorganization for the Debtor. In the event that the Debtor's case is dismissed or converted to one under Chapter 7 of the Bankruptcy Code, this Stipulation and Order shall survive, but the Lender's consent for continued use of Cash Collateral shall terminate. Nothing herein, however, shall preclude the Debtor or any other creditor or party in interest, from proposing, confirming and implementing a plan of reorganization that complies with the terms of the Bankruptcy Code or any order of the Bankruptcy Court and nothing herein shall preclude the Debtor from refinancing the Real Property with payment in full to the Lender of Lender's allowed secured claim.

18. The provisions of this Stipulation and Order shall inure to the benefit of the Debtor and the Lender and shall be binding upon the Debtor and its successors and assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtor, or with respect to property of the estate of the Debtor, whether under Chapter 11 of the Bankruptcy Code or in any subsequent Chapter 7 case, and upon the United States Trustee and all creditors and parties in interest in this case.

19. Nothing in this Stipulation and Order shall limit or prejudice the Lender's rights as provided by the Loan Documents and by applicable law, including, without limitation, under the

Bankruptcy Code and the Uniform Commercial Code, including, but not limited to, the Lender's rights to seek additional adequate protection, to request conversion or dismissal of the Debtor's Chapter 11 case, to request appointment of a trustee or examiner, or to propose or solicit acceptance of a plan of reorganization for the Debtor. All of Lender's rights are expressly preserved and reserved.

20. The provisions of this Stipulation and Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court with the consent of Lender and the Debtor. The terms of this Stipulation may not be modified without the written consent of Lender and the Debtor.

21. Except as explicitly provided for herein, this Stipulation and Order does not create any rights for the benefit of any third party, creditor, equity holder or other person or entity.

22. Lender reserves all of its rights and remedies against the Guarantors under the terms of the Guarantees, and as against Brisa Marina Bar & Grill Corp., and nothing herein shall impair any such rights and remedies or be an admission, waiver or release adverse to Lender.

23. Lender reserves its rights to seek recovery of interest at the default interest rate, attorneys' fees and any other amounts under the Loan Documents as may be allowed by the Court pursuant to 11 U.S.C. § 506(b).

24. The Final Hearing on the Debtor's use of cash collateral shall be held on July 28, 2015 at 10:00 a.m. This Stipulation and Order shall be in effect until July 28, 2015 unless the parties agree between themselves to extend the date.

25. Within two business days after entry of this Stipulation and Order, a copy of this Stipulation and Order shall be served upon parties who have requested notice, all creditors

and the Office of the United States Trustee.

26. Any objection to the entry of an Order approving this Stipulation and order shall be served on counsel for (a) the Debtor and (b) Cathay Bank with a copy to Chambers so as to be received at least two (2) business days before the Final Hearing.

Dated: Spring Valley, New York
    July 9, 2015

        /s/ Rosemarie E. Matera
        Rosemarie E. Matera, Esq.
        Kurtzman Matera, P.C.
        Attorneys for Debtor
        664 Chestnut Ridge Road
        Spring Valley, New York 10977

Dated: New York, New York
    July 9, 2015

        /s/ Conrad K. Chiu
        Conrad K. Chiu, Esq.
        Pryor Cashman, LLP
        Attorney for Cathay Bank
        7 Times Square
        New York, New York 10014

**SO ORDERED** by the Court this 13th day of July, 2015

        /s/Robert D. Drain
        Honorable Robert D. Drain
        United States Bankruptcy Judge