# *EXHIBIT "A"*

Rosemarie E. Matera, Esq.
Kurtzman Matera, P.C.
Attorneys for Debtor
664 Chestnut Ridge Road
Spring Valley, New York 10977
(845) 352-8800
law@kmpclaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- x
In re:

Grace Church Realty Corp.,                                      Chapter 11

                        Debtor.                        Case No: 15-22787(RDD)
-------------------------------------------------------------------------- x

## AMENDED PLAN OF REORGANIZATION

Grace Church Realty Corp., ("Debtor"), the debtor and debtor-in-possession herein,

proposes the following amended plan of reorganization pursuant to §1121(a) of the Bankruptcy

Code (as such term is defined below) for the resolution of the outstanding claims against and equity

interests in the Debtor.  The Debtor is the proponent of the Plan (as such term is defined below)

within the meaning of §1129 of the Bankruptcy Code.   Reference is made to the Disclosure

Statement (as such term is defined below), distributed contemporaneously with the Plan, for a

discussion of the Debtor's history, business, results of operation, historical financial information,

and assets and for a summary and analysis of the Plan.

## ARTICLE I

## INTRODUCTION

The Debtor filed a voluntary Chapter 11 petition on June 4, 2015 with the United States

Bankruptcy Court ("Bankruptcy Court") for the Southern District of New York.  The Debtor's

attorney is the firm of Kurtzman Matera, P.C., retained by Order of the Bankruptcy Court dated

June 26, 2015.  The Debtor has remained in possession of its assets and operation of its business

-1-

throughout this proceeding.  No committee of unsecured creditors was appointed by the Office of

the United States Trustee.  The Debtor is proposing this Chapter 11 Plan for the purpose of

emerging from Chapter 11 and providing a distribution to its creditors and equity holder.

## ARTICLE II

## DEFINITIONS

For purposes of this Plan and to the extent not otherwise provided herein, the following

terms shall have the meanings set forth below.  Unless otherwise indicated, the singular shall

include the plural, pronouns of one gender shall include all genders, and capitalized terms shall at

all times refer to the terms as defined herein.  A term used in this Plan that is not defined in this

Plan but that is used in the Bankruptcy Code shall have the meaning assigned to it in the

Bankruptcy Code.

2.1     "Administrative Creditor" shall mean any Creditor entitled to payment of an Allowed

Administrative Claim.

2.2     "Administrative Claim" shall mean a timely filed Claim for any cost or expense

of administering this Chapter 11 case, under Section 503(b) of the Bankruptcy Code, including

without limitation, actual and necessary expenses of operating the business of the Debtor; all

allowances of compensation or reimbursement of expenses to the extent allowed by the

Bankruptcy Court under Sections 330 and 331 of the Code.

2.3     "Allowed" shall mean, with respect to any Claim, that the Allowed Amount of such

Claim has been determined.

2.4     "Allowed Amount" shall mean, with respect to an Allowed Claim, the amount of such

Allowed Claim.

2.5     "Allowed Claim" shall mean a Claim against the Debtor, proof of which was filed on

or before August 14, 2015, the date designated by the Bankruptcy Court as the last date for filing

proofs of claim, or, if no proof of claim is filed, which has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed or as to which any objection has been determined by an order or judgment of the Bankruptcy Court that is a Final Order.   Unless otherwise specified, Allowed Claims shall not include post-Filing Date interest on the amount of any Claim.

2.6    "Ballot" shall mean the Ballot distributed to each Claim holder on which Ballot such Claim holder may, *inter alia* vote for or against the Plan.  No Ballot is being distributed in this Chapter 11 Case.

2.7    "Bankruptcy Code" shall mean the United States Bankruptcy Code, 11 U.S.C. §101 *et seq.*

2.8    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York, or such other Court as may hereafter be granted primary jurisdiction over this Chapter 11 Case.

2.9    "Business Day" shall mean any day other than a Saturday, Sunday or legal holiday.

2.10    "Chapter 11 Case" shall mean the case under Chapter 11 of the Bankruptcy Code which was commenced by the Debtor on June 4, 2015.

2.11    "Claim" shall mean a claim against the Debtor as defined in Section 101(5) of the Bankruptcy Code, to wit:

(a)    any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or

(b)    any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment whether or not such right to an equitable remedy is reduced to

judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

2.12    "Confirmation" shall mean entry of an order of the Bankruptcy Court confirming the Plan in accordance with the applicable provisions of the Bankruptcy Code.

2.13    "Confirmation Date" shall mean the date upon which the Confirmation Order, signed and so ordered by the Bankruptcy Court, is entered upon the docket by the Clerk of the Bankruptcy Court.

2.14    "Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

2.15    "Creditor" shall mean any Person that has a Claim against the Debtor that arose on or before the filing of the Chapter 11 Case.

2.16    "Debtor" shall mean Grace Church Realty Corp.

2.17    "Disputed Claim" shall mean the portion (including, when appropriate, the whole) of a Claim that is not an Allowed Claim as to which: (a) a proof of claim has been filed, or deemed filed under applicable law or order of the Bankruptcy Court, with the Bankruptcy Court: (b) an objection has been or may be timely filed; and (c) such objection has not been: (I) withdrawn; (ii) overruled or denied in whole or part by a Final Order: or (iii) granted in whole or part by a Final Order.  For the purposes of the Plan, a Claim shall be considered a Disputed Claim in its entirety before the time that an objection has been or may be filed, if: (a) the amount or classification of the Claim specified in the proof of claim exceeds the amount or classification of the Claim scheduled by the Debtor in its Schedules of Assets and Liabilities; (b) any corresponding Claim scheduled by the Debtor has been scheduled as disputed, contingent, or unliquidated; or (c) no corresponding Claim has been scheduled by the Debtor in its Schedules of Assets and Liabilities.  Administrative Claims and cure costs are, to the extent objected to, and/or subject to an Administrative bar date, deemed a disputed claim until allowed by order of this Bankruptcy Court.

-4-

2.18    "Disputed Claims Reserve" shall mean a reserve of cash or cash equivalents for the relevant Class, established herein for, *inter alia*, the payment of Disputed Claims that become Allowed Claims after the Effective Date.  The Disputed Claims Reserve will be held at an authorized depository institution for the Southern District of New York.

2.19    "Effective Date" shall mean the later of:  (a) ten (10) days after the closing of the refinancing of the Property; or (b) if a stay of the Confirmation Order is in effect, on a Business Day selected by the Debtor that is not more than fourteen calendar days after the date such stay is vacated or any appeal, rehearing, remand or petition for certiorari is resolved, provided any appeal, rehearing, remand or petition for certiorari does not reverse or modify the Confirmation Order.

2.20    "Estate" shall mean the estate of the Debtor created by Section 541 of the Bankruptcy Code.

2.21    "Federal Rules of Bankruptcy Procedure" shall mean the Federal Rules of Bankruptcy Procedure, as the same shall be applied to the Chapter 11 Case.

2.22    "Filing Date" shall mean June 4, 2015, the date the Debtor filed its Chapter 11 petition commencing the Chapter 11 Case.

2.23    "Final Order" shall mean an order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified and as to which the time to appeal on to seek certiorari, review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending or as to which any right to appeal or to seek certiorari, review or rehearing has been waived in writing in a manner satisfactory to the Debtor.

2.24    "FKAL" shall mean FKAL Management Corp., a Secured Creditor of the Debtor and transferee of the claim of Cathay Bank via Notice of Transfer of Claim Other Than For Security filed with the Bankruptcy Court on December 17, 2015.

2.25    "General Unsecured Claim" shall mean any Claim that is not a Secured,

Administrative, Priority or Tax Claim.

2.26    "Interest Holder" shall mean Juan Cepeda.

2.27    "Interests" shall mean the stock in the Debtor, currently held by Juan Cepeda.

2.28    "Person" shall mean an individual, a corporation, a partnership (including a limited partnership), an association, a joint stock company, a joint venture, an estate, a trust, an incorporated organization or a governmental entity or any political subdivision thereof or other entity.

2.29    "Plan" shall mean this Chapter 11 Plan filed by the Debtor.

2.30    "Professional" shall mean any person or entity retained in this Chapter 11 Case by Order of the Bankruptcy Court.

2.31    "Professional Fee Claim" shall mean the amount of payment sought by a Professional from the Debtor and subject to approval by the Bankruptcy Court.

2.32    "Property" shall mean the Debtor's real property located at 40 Grace Church Street, Portchester, New York 10573

2.33    "Priority Claim" shall mean an Allowed Claim entitled to priority treatment under Section 507(a) of the Bankruptcy Code with the exception of Priority Tax Claims.  The Debtor is not aware of any Priority Claim in this case.

2.34    "Receiver" shall mean Michael Padernacht.

2.35    "Secured Claim" shall mean that portion of a Claim which is equal to the value of the interest of the holder thereof in property of the Debtor securing such Claim as determined by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code.

2.36    "Secured Creditor" shall mean the holder of a Secured Claim.

2.37    "Secured Tax Claim" shall mean an Allowed Claim for real property taxes.

2.38    "Tax Claim" shall mean an Allowed Claim for taxes, excluding real property taxes.

2.39    "Town of Rye" shall mean the Receiver of taxes for the Town of Rye, which is owed

real property taxes and which filed a proof of claim with the Clerk of the Bankruptcy Court.

## ARTICLE III

## DESCRIPTION OF THE DEBTOR

The Debtor is the owner of the Property.  The Property consists of six (6) residential units

and one (1) ground floor commercial unit.  The tenants at the Property do not have leases.  The

monthly rent for each of the residential units is as follows:

    1.    $1.100.00
    2.    $1,400.00
    3.    $1,500.00
    4.    $1,500.00
    5.    $1,500.00
    6.    $1,500.00

The current monthly rental for the commercial space occupied by Brisa Marina Restaurant,

an entity in which Mr. Cepeda is the principal, is $3,000.00.

As of the Filing Date, the Debtor was in default to its then Secured Creditor, Cathay Bank,

and owed real property taxes to the Town of Rye.  Cathay Bank, prior to the Filing Date,

commenced a foreclosure proceeding against the Debtor, within which the Receiver was appointed.

New Bank, which holds a second position mortgage on the Property, is also secured by real

property located at 6508 Bergenline Avenue, West New York, New Jersey and receives its monthly

mortgage payment therefrom.  New Bank did not file a proof of Claim or notice of appearance in

this Chapter 11 Case.  The Secured Claim of New Bank will be reinstated upon the Effective Date

pursuant to Section 1124(2) of the Bankruptcy Code.

Immediately following the Filing Date, the Debtor sought approval for use of cash collateral

and a turnover of funds held by the Receiver.  A Stipulation and Order authorizing interim use of

cash collateral and a continuance thereof was negotiated with Cathay Bank and entered by the

Bankruptcy Court on July 13, 2015 and July 27, 2015, respectively.  A Stipulation and Order

authorizing final use of cash collateral was entered by the Bankruptcy Court on August 20, 2015. On December 17, 2015, FKAL acquired the secured claim of Cathay Bank. A second Stipulation and Order authorizing final use of cash collateral was entered by the Bankruptcy Court on February 19, 2016.  This Second Stipulation and Order required the Debtor to file a Plan and Disclosure Statement by April 29, 2016.

The Receiver, after being advised of the directive of the Bankruptcy Court that he immediately surrender assets of the Debtor, delivered $73,175.00 to the Debtor.  The Debtor deposited these funds in its debtor in possession account.  As permitted by the Stipulation and Orders regarding the use of cash collateral, the Debtor, has since the Filing Date, paid monthly payments to Cathay Bank and its post-petition real property taxes.  The Debtor also paid a portion of pre-petition real property taxes to the Town of Rye.

The Receiver applied to the Bankruptcy Court for a commission and fees.  An Order was entered by the Bankruptcy Court on December 15, 2015, approving Receiver compensation in an amount of $5,787.02.  As required by that Order, a check for the full amount has been sent to the Receiver.

The Debtor will emerge from Chapter 11 via a refinancing of the Property.  Due By The First, LLC, or an affiliate will loan to the Debtor, secured by a first position mortgage on the Property and the personal guarantee of Juan Cepeda, the Interest Holder, the sum of $930,000.00. With Allowed Claims and Administration Expenses totaling approximately $875,000.00, all Allowed Claims and Administration Expenses will be paid in full on the Effective Date.

## ARTICLE IV

### PROVISIONS FOR THE PAYMENT OF UNITED STATES TRUSTEE FEES, AND TREATMENT OF ADMINISTRATIVE CLAIMS

Pursuant to §1123(a)(1) of the Bankruptcy Code, United States Trustee Fees and Administrative Claims are not classified under the Plan.  All such Claims, as well as Professional

Fee Claims and U.S. Trustee Fees, are instead treated separately upon the terms set forth in this Article IV .

4.1    **United States Trustee Fees**.  All fees and any applicable interest payable to the United States Trustee, pursuant to 28 U.S.C. §1930, shall be paid in full on or prior to the Effective Date.  All fees and any applicable interest payable pursuant to 28 U.S.C. §1930 after the Effective Date will be paid from the funds generated through operations until the closing of the Chapter 11 case pursuant to §350(a) of the Bankruptcy Code.

4.2    (a)    **Administrative Claims**.  Each holder of an Allowed Administrative Claim shall receive an amount equal to the Allowed Amount of the Administrative Claim on the later of: (a) the Effective Date; (b) within fourteen (14) days after the date such Administrative Claim becomes an Allowed Claim; or (c) on such other date as may be ordered by the Bankruptcy Court.  The treatment of Administrative Claims of the Professionals are addressed below in Article 4.3.

(b)    **Administrative Claims Bar Date.**  Any claimant seeking an allowance of an Administrative Claim not arising out of the ordinary course of the Debtor's business, the amount of which is not agreed to in writing by the Debtor and the claimant or otherwise allowed by a final order prior to the Confirmation Hearing, must file proof of its Administrative Claim with the Bankruptcy Court and serve a copy thereof upon (i) Debtor's counsel and (ii) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attention: Susan Golden, Esq., no later than thirty (30) days following the notice of the Confirmation Date, or such Claim will not be Allowed or receive any distribution in this case, provided, however, that with respect to any such timely filed Administrative Claim, such Claim shall be allowed only if (i) the amount is agreed to in writing by the Debtor or the Reorganized Debtor and such claimant, (ii) no objection to the allowance thereof is interposed by the Debtor on or before thirty (30) days after the Effective Date, or such other date

as may be established by the Bankruptcy Court for cause, or (iii) if an objection is interposed, (x) such Administrative Claim has been Allowed by Final Order, or (y) such objection is withdrawn. With respect to claimants seeking allowance of Professional Fees Claims, all applications for final compensation of professionals for services rendered and for reimbursement of expenses incurred for any period prior to the Confirmation Date must be filed no later than thirty (30) days following the Confirmation Date and shall be deemed Allowed following entry by the Bankruptcy Court of any filed Order or Orders allowing same.

4.3   **Professional Fee Claims**

I.   **Treatment**.  Allowed Administrative Claims of Professionals shall be paid in full on the later of the Effective Date or as soon as reasonably practicable after the first Business Day following the date upon which such Professional Fee Claim becomes Allowed by a Final Order, unless such holder agrees to a different treatment of such Claim.

## ARTICLE V

## TREATMENT OF ALLOWED TAX CLAIMS

All Allowed Tax Claims shall be paid in full on the Effective Date.

Claim No. 1 was filed by the Internal Revenue Service in an amount of $2,281.90.  Claim No. 5 was filed by New York State Department of Taxation and Finance in an amount of $1,345.29, with $1,095.29 designated as a Priority Claim.  These Claims will be paid in full on the Effective Date unless challenged by the Debtor within the time frame permitted by this Plan.

## ARTICLE VI

## CLASSIFICATION OF CLAIMS AND INTEREST

6.1   A Claim or Interest is in a particular Class only to the extent that the Claim qualifies within the description of that Class and is in a different Class or Interest to the extent that the remainder of the Claim qualifies within the description of the different Class.

-10-

6.2.     All Allowed Claims and Interests with the exception of Administrative Claims and Tax Claims against the Debtor are placed in Classes.

6.3     **Administrative**

Administrative Claims are not classified.

6.4     **Tax Claims**

The Tax Claims of the Internal Revenue Service and New York State Department of Taxation and Finance are not classified.  The Secured Claim of the town of Rye is separately classified as noted in 6.5 below.

6.5     **Secured Claims**

Each Secured Claim is separately classified.

6.5     **Interests**

The Interests are separately classified.

## ARTICLE VII

## CLASSIFICATION OF CLAIMS AND INTEREST

The following sets forth the Classification of each type of Allowed Claim and Allowed Interest in the Debtor.  The Claims against and Interests in the Debtor's estate include two Secured Claims and the Interest, which together encompass three (3) separate Classes.  The three (3) separate Classes are:

7.1     **Class 1** shall consist of the Allowed Secured Claim of FKAL.

7.2     **Class 2** shall consist of the Allowed Secured Claim of New Bank.

7.3     **Class 3** shall consist of Allowed Secured Claim of the Town of Rye.

7.4     **Class 4** shall consist of the Allowed Interest of the Interest Holder.

Only Allowed Claims and the Interest will be entitled to a distribution under the Plan.

## ARTICLE VIII

## TREATMENT OF ALLOWED ADMINISTRATION CLAIMS

All Allowed Administration Claims, consisting of the Allowed fees and expenses of the Professionals, shall be paid from funds acquired by the Debtor through a refinancing, in cash in such amounts as such Claims are Allowed by the Bankruptcy Court, upon the later of: (a) the Effective Date; or (b) the date upon which the Bankruptcy Court enters an Order allowing such Administration Claim; or (c) as otherwise agreed between the Debtor and the Professional. Administration Claims are estimated to be approximately $40,000.00 over and above the retainer, consisting of the fees and expenses of Kurtzman Matera, P.C., counsel to the Debtor and possibly to real estate counsel subject to retention by the Bankruptcy Court in an approximate amount of $5,000.00.

## ARTICLE IX

## TREATMENT OF ALLOWED SECURED CLAIM OF FKAL

The Class 1 Claim Holder, FKAL, which holds a mortgage on the Property of the Debtor, will be paid its monthly payment until the refinancing.  The Secured Claim of FKAL is in an approximate amount of $775,000.00.  It is also noted that FKAL is an over-secured Secured Creditor with rights under Section 506(b) of the Bankruptcy Code.  On the Election Date, the Secured Claim of FKAL will be accelerated and paid in full.  The monthly payment on the mortgage is currently $5,651.19.  The monthly payment will be made until the Effective Date.  This Class is not impaired and not entitled to vote on the Plan.

## ARTICLE X

## TREATMENT OF THE ALLOWED SECURED CLAIM OF NEW BANK

The Class 2 Claim Holder, New Bank, which holds a second position mortgage in the amount of $579,000.00 on the Property as additional collateral for a loan also secured by the real

property at 6508 Bergenline Avenue, West New York, New Jersey, and serviced by the income therefrom. The Class 2 Secured Creditor will receive no distribution under this Chapter 11 Plan. It will have its legal, equitable and contractual rights reinstated pursuant to Section 1124(2) of the Bankruptcy Code; thus, retaining its position on the Property. This Class is not impaired and not entitled to vote on the Plan.

## ARTICLE XI

## TREATMENT OF THE ALLOWED SECURED CLAIM OF THE TOWN OF RYE

The Class 3 Claim Holder, the Town of Rye, has a Secured Tax Claim secured by the Property in an amount of approximately $45,000.00. Taxes owed since the Filing Date have been paid. Taxes for the year 2014 were also paid by the Debtor since the Filing Date. The Class 3 Claim will be paid in full on the Effective Date. This Class is not impaired and not entitled to vote on the Plan.

## ARTICLE XII

## TREATMENT OF THE EQUITY INTEREST

The Interest Holder, Juan Cepeda, shall retain his existing, pre-petition Interest in the Debtor. This Class is not impaired and not entitled to vote on the Plan.

## ARTICLE XIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor has no executory contracts or unexpired leases.

## ARTICLE XIV

## MEANS FOR EXECUTION OF THE PLAN

14.1    The Plan is to be implemented consistent with the provisions of Section 1123 of the Bankruptcy Code. All distributions under the Plan will be made by the Debtor.

14.2    The Allowed Administrative Claims of Professionals shall be paid by the Debtor on the later of the Effective Date or the date upon which the Bankruptcy Court enters an Order allowing such Administration Claim or as otherwise agreed between the Debtor and such creditor.

14.3    The Class 1 and Class 3 Claim Holders will be paid in full on the Effective Date, upon the refinancing of the Property by The First, LLC or its designee.

14.4    The Class 2 Claim Holder's secured lien on the Property will be reinstated as of the Effective Date  will retain its position on the Property and it will retain its secured lien on the real property at 6508 Bergenline Avenue, West New York, New Jersey and continue to have its loan serviced therefrom.

14.5    The Class 4 Interest Holder will retain his existing Interest in the Debtor and remain the sole officer of the Debtor.

14.6    Existing tenants will continue their tenancies.

## ARTICLE XV

## EVENT OF DEFAULT

The failure by the Debtor to comply with or to perform any material provisions of this Plan, and continuance of such failure for thirty (30) days after written notice thereof to the Debtor and its counsel shall constitute an "Event of Default" under this Plan.  If an Event of Default shall occur, any party-in-interest shall have the right to apply to the Court to reopen, dismiss or convert the Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code.  In the event of a default, any and all releases, discharges or waivers granted pursuant to the Plan shall be revoked and considered null and void.

## ARTICLE XVI

## EFFECT OF CONFIRMATION ON CLAIMS AND INTERESTS

16.1.1  Except as otherwise provided in the Plan or Confirmation Order, in accordance with

-14-

Section 1141(d) of the Bankruptcy Code, the Confirmation Order, upon becoming a final Order, acts to discharge the Debtor, effective as of the Confirmation Date, of all Claims against, debts of, or liens against the Debtor, its assets or property, which Claims, debts, liens or interests arose at any time prior to entry of the Confirmation Order.  The discharge of the Debtor shall be effective as to each Claim regardless of whether a proof of such Claim was filed, whether such Claim is an Allowed Claim, or whether the Claim Holder votes to accept the Plan. The holder of a discharged Claim shall be forever barred and precluded from asserting against the Debtor, its assets or property, any other or further Claim or Interest based upon any documents, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the Confirmation Date.

16.1.2  In accordance with Section 524 of the Bankruptcy Code, the discharge provided by this Article and Section 1141 of the Bankruptcy Code, *inter alia,* acts as an injunction against the commencement or continuation of any action, employment of process or act to collect, offset or recover the Claims and Interests discharged by this Plan.  Such injunction shall extend to any successor of the Debtor (including, without limitation, the Reorganized Debtor) and its respective property and interests in property.

**16.2**    **Title to Assets**

Except as otherwise provided in this Plan, on the Effective Date, title to all assets of the Debtor shall vest in the Reorganized Debtor free and clear of all Claims, liens, charges and encumbrances of creditors except for the agreements and obligations detailed herein.

## ARTICLE XVII

## OTHER PLAN PROVISIONS

17.1.    **Disputed Claims.**  The amount of any Disputed Claim which would otherwise be entitled to a distribution were the Claim Allowed, will be reserved from any distribution thereon.

-15-

Upon a Disputed Claim becoming an Allowed Claim by a Final Order, any distributed amount then due to be made in respect of such Claim shall be issued to the holders of the Allowed Claim within thirty (30) days.

17.2.  **Unclaimed Cash.**  Any person who fails to claim any cash within three (3) months from the date such cash is distributed, shall forfeit all rights to that distribution and shall have no further claim whatsoever against the Debtor to such distribution.  Unclaimed cash shall be returned to the Debtor.

17.3.  **Modification of the Plan**.  The Debtor reserves the right, in accordance with the Bankruptcy Code, to amend or modify the Plan prior to the Confirmation Date.  After the Confirmation Date, the Debtor may, upon order of the Bankruptcy Court, in accordance with Section 1127(b) of the Bankruptcy Code and on appropriate notice, remedy any defect or omission or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

17.4.  **Method of Distribution Under the Plan.**  The Debtor shall make all cash payments or other distributions under the Plan upon the Effective Date.

17.5.  **Objections to Claims**.  The Debtor reserves the right to file any objections not previously filed with the Court within one hundred twenty (120) days after the Confirmation Date.

17.6.   **Avoidance Claims.**  The Debtor is not aware of any avoidance claims, such as for preferences or fraudulent transfers, under Chapter 5 of the Bankruptcy Code, and will not seek any affirmative recovery on any such claims (which, again, it does not believe exist) after Confirmation of the Plan.

17.7**.**  **Limitation of Liability**.  **From and after the Effective Date, to the extent permitted**

**under Section 1125(e) of the Bankruptcy Code, the Debtor, its officers and directors and the Debtor's Professionals shall neither have nor incur any liability to any Person for any act**

**taken or omitted to be taken in connection with the Case, including the formulation, preparation, dissemination, implementation, confirmation or approval of the Plan, any Exhibits thereto, the Disclosure Statement or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; provided, however, that the foregoing provisions (a) shall not affect the liability of any Person that otherwise would result from any such act or omission to the extent that act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct, and (b) shall not abrogate any applicable disciplinary rules.  Any of the foregoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  Nothing in the Plan shall limit the liability of the lawyers to their respective clients pursuant to N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8 Rule 1.8(h)(1) (2009).**

17.8.    Except as provided for in the Plan or by any Orders entered in this Chapter 11 Case resolving Claims of taxing authorities, nothing in this Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor or its shareholders, officers, directors or employees, attorneys, advisors, agents, representatives and assigns (the "Released Parties"), nor shall anything in this Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Parties referred to herein for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority, nor shall anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local

authority whatsoever including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties referred to herein.

17.9 **Post-Confirmation Quarterly Fees and Reports.**  The Debtor will be responsible for post-confirmation reports and the payment of quarterly fees to the United States Trustee.  Post-Confirmation quarterly reports continue to be due and quarterly fees pursuant to 28 U.S.C. Section 1930(a)(6) and 31 U.S.C. Section 3717 and any interest thereon continue to be payable to the Office of the United States Trustee post-confirmation until such time as the case is converted, dismissed or closed pursuant to a final decree.  Any outstanding amounts due to the Office of the United States Trustee shall be paid at Confirmation.  Post-Confirmation Quarterly Reports will, as required by Local Bankruptcy Rule 3021-1(c), be filed within forty-five (45) days of the entry of the post-confirmation order in this case, and then every January 15th, July 15th and October 15th until a final decree has been entered.

17.10 **Employment and Payment of Professionals After Confirmation Date.**

The Reorganized Debtor may employ and pay professionals including any Professional retained in the Chapter 11 Case, with respect to services to be rendered after the Confirmation Date, including services in connection with the implementation and consummation of the Plan, without further order of the Bankruptcy Court.  Unless otherwise provided for in the Confirmation Order or other order of the Court, fees and expenses incurred for services rendered to the Debtor by its professionals following the Confirmation Date, shall be paid by the Reorganized Debtor.

17.11 **Injunction**.  On the Effective Date of the Plan, except as otherwise provided in the Plan or the Confirmation Order, all Persons shall be deemed to be bound by the terms of the Plan, including holders of Claims or Interests not listed in the Schedules, or listed on the Schedules as disputed, unliquidated or contingent, who did not file Proofs of Claim or Interest by the applicable Bar Date, and, to the extent permitted under Section 1141(d)(3) of the Bankruptcy Code,

will be prohibited from:

a)    commencing or continuing any suit, action or other proceeding of any kind or nature or employing any process against the Debtor, the Estate, the Assets, the Estate Representative or any direct or indirect successor to the Debtor, or to interfere with the consummation or implementation of this Plan, or the Distributions to be made hereunder,

b)    enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order against the Debtor, the Estate or the Assets or any direct or indirect successor in interest to the Debtor, or any assets or property of such successor,

c)    creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien against the Debtor, the Estate or the Assets, or any direct or indirect successor in interest to the Debtor, or any assets or property of such successor other than as contemplated by the Plan,

d)    except as provided herein, asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, the Estate or the Assets, or any direct or indirect successor in interest to the Debtor, or any assets or property of such successor, and

e)    proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan.

## ARTICLE XVII

## RETENTION OF JURISDICTION

Notwithstanding Confirmation of this Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction for the following purposes:

18.1    Determination of all controversies relating to or concerning the classification, allowance, disallowance, subordination, treatment or satisfaction of Claims;

18.2    Determination of the validity, extent, value, priority and avoidability of consensual

and non-consensual liens and other encumbrances.

18.3    Determination of tax liability pursuant to Section 505 of the Code;

18.4    Determination of all matters relating to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease;

18.5    Determination and fixing of all Administration Claims entitled to priority pursuant to Section 507(a)(1) of the Code, including compensation to counsel, and other professionals.

18.6    Resolution of controversies and disputes regarding the interpretation of this Plan;

18.7    Determination of any applications, motions, adversary proceedings and contested or litigated matters properly before or hereafter brought in this Court;

18.8    Liquidation or other determination of all disputed, contingent or unliquidated Claims;

18.9    Modification of the Plan pursuant to Section 1127 of the Bankruptcy Code;

18.9.    Implementation of the provisions of this Plan and entry of orders in aid of Confirmation and consummation of the Plan;

18.10    Determination of such matters as may be provided for in the Confirmation Order or may be in aid of consummation of the Plan at any time until the final distribution payable to Claim or Interest Holders has been made.

18.11    Adjudication of any causes of action that arose pre-Confirmation or in connection with the implementation of this Plan.

18.12    Entry of a Final Order closing the Debtor's Chapter 11 Case; and

18.13    Resolution or reconciliation of any omission or inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and intent of the Plan.

## ARTICLE XIX

## MISCELLANEOUS PROVISIONS

19.1    **Entire Agreement**.  This Plan and the Confirmation Order, including any exhibits, sets forth the entire agreement and understanding among the parties hereto relating to the subject

matter hereof and supersedes all prior discussions and documents.  No party shall be bound by any terms, conditions, definitions, warrants, understandings or representations with respect to the Plan other than as are expressly provided for herein.  Should any provision in the Plan be determined to be unenforceable by a Bankruptcy Court of competent jurisdiction, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.  The duties, rights and obligations of any person or entity named or referred to in the Plan shall be binding upon, inure to the benefit of and shall be the responsibility of, the successors and assigns of such person or entity.

19.2    **Satisfaction of Claims and Interests.**  Upon confirmation of this Plan, the Debtor and the Estate shall be conclusively determined to have no liability to the holder of any Claim or Interest that is not Allowed, and only to the extent provided for in the Plan with respect to the holder of any Allowed Claim or Interest.  This provision shall not be construed as a release of any Claims any creditor may have against a third party on account of its Claim.

19.3    **Headings.**  The headings of the Articles, paragraphs and sections of this Plan are inserted for convenience only and shall not affect the interpretation hereof.  This Plan, including any exhibits and other attachments hereto, shall constitute the entire Plan, subject to amendment or modification solely as provided herein.  Article I of this Plan is and shall be regarded as an integral, substantive and operative part of the Plan.

19.4    **Revocation**.  The Debtor reserves the right to revoke and withdraw this Plan at any time prior to the Confirmation Date.  If the Plan is revoked or withdrawn, it shall be deemed null and void, and in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtor or any other entity, or to prejudice in any manner, the rights of the Debtor or any entity in any further proceeding involving the Debtor.

19.5    **Substantial Consummation**.  The Plan will be deemed substantially consummated, as such term is used in Section 1101(2) of the Bankruptcy Code, upon the

commencement of Distributions to the holders of a Class of Claims under this Plan.  Following such substantial consummation, any appeal, rehearing or other post-confirmation motion of any nature with respect to this Plan or the Confirmation Order except as specifically provided herein or therein shall be rendered moot and no longer justiciable.

19.6    **Reservation of Rights**.  In the event that this Plan is not confirmed or that the Effective Date does not occur, the rights of all parties in interest in the Case shall be reserved in full.

19.7    **Authorizations.**  The Debtor is authorized, empowered and directed to execute such documents and take any and all other action as may be necessary or required in order to effectuate the terms of this Plan.

19.8    **Transaction on Business Days.**  If the Effective Date or any other date on which a transaction or Distribution may occur hereunder shall fall on a day that is not a Business Day, the transaction or Distribution shall instead take place on the next Business Day.

19.9    **Defects, Omissions and Amendments**.  This Plan may be altered, or modified by the Debtor before or after the Confirmation Date as provided in Section 1127 of the Code.

19.10    **Governing Law**.  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

19.11    **Severability**.  Should any provision in this Plan be determined to be unenforceable, such determination shall, to the extent possible, in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan.

19.12    **Effectuating Documents and Further Transactions**.  The Debtor shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan.

19.13   **Successors and Assigns.**   The rights, benefits, and obligations of any Person or entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heirs, executors, administrators, successors, or assigns of such Person or entity.

19.14   **Officers In The Reorganized Debtor**.   The Officer of the Reorganized Debtor will be Juan Cepeda, President.   He will receive no salary on account of their position.

19.15   **Disputed Claims**.      Except as may otherwise be agreed with respect to any Disputed Claim, no payments or distributions shall be made with respect to all or any portion of such Disputed Claim unless and until all objections to such Disputed Claim have been determined by a Final Order or the date by which to file objections to Claims has expired and no objection has been filed to particular claim.   Payments and distributions to each holder of a Disputed Claim to the extent that it ultimately becomes an Allowed Claim shall be made in accordance with the provisions of the Plan with respect to the class of Creditors to which the holder of such an Allowed Claim belongs.   Any payments that would have been made prior to the date on which a Disputed Claim became an Allowed Claim shall be made within ten (10) days after the date that the order or judgment allowing such Claim is a Final Order, if applicable.   Notwithstanding any other provision of this Plan, the Debtor shall withhold from the property to be distributed under this Plan on account of Disputed Claims, and shall place in an interest-bearing reserve account a sufficient amount to be distributed on account of the amount of such Claim or Claims that are Disputed Claims and that have not become Allowed Claims as of the date of the initial distribution under this Plan.   Upon determination of the Disputed Claims by a Final Order or the date by which to file objections to Claims has expired and no objection has been filed to a particular Claim, the Reorganized Debtor shall pay from such reserve to any such Claimant the amount due pursuant to such Final Order together with interest earned thereon, if applicable.

19.20   **Withdrawal of Plan.**   The Debtor reserves the right, in its sole and absolute discretion, to withdraw the Plan.

19.21  **Confirmation Order and Plan Control**.  To the extent the Confirmation Order

and/or this Plan is inconsistent with the Disclosure Statement, any other agreement entered into

between or among the Debtor and any third party, this Plan controls the Disclosure Statement and

any such agreements and the Confirmation Order (and any other orders of the Court) controls this

Plan.

Dated: Portchester, New York
     June 17, 2016

                        Grace Church Realty Corp.


                        By: **/s/Juan Cepeda**
                            Juan Cepeda

Dated: Spring Valley, New York
     June 17, 2016

                        Kurtzman Matera, P.C.
                        Attorneys for Debtor-in-possession


                        By: **/s/ Rosemarie E. Matera**
                            Rosemarie E. Matera, Esq.
                            664 Chestnut Ridge Road
                            Spring Valley, New York 10977
                            (845) 352-8800